IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
(Southern Division)

| | |
|---|---|
| **TOMMY HARNESS,** | ) |
| Plaintiff, | ) |
| v. | ) Civil Action No. 1:23cv210HSO-MTP |
| **CHEVRON U.S.A., INC.,** | ) |
| Defendant. | ) |

**ORIGINAL COMPLAINT AND DEMAND FOR JURY TRIAL**

Plaintiff Tommy Harness ("Plaintiff" or "Mr. Harness"), by and through the undersigned counsel, sues Defendant Chevron U.S.A., Inc. ("Defendant" or "Chevron") for years of racial discrimination, retaliation and hostile work environment, and alleges as follows:

**NATURE OF THE CASE**

This is a racial discrimination case on behalf of Plaintiff Tommy Harness who is one of the longest-tenured employees at Chevron's Refinery located in Pascagoula, Mississippi and perhaps one of the longest-tenured employees at Chevron. Plaintiff brings this lawsuit because he has endured persistent and pervasive racial discrimination as a Chevron employee for almost 40 years. Despite training many supervisors, working every job in the refinery, and having more responsibility than most managers and supervisors at Chevron Pascagoula, Mr. Harness has never been promoted to a manager position based on the color of his skin. On the other hand, white employees trained by Mr. Harness, mostly male, with less professional experience and educational backgrounds have been promoted to managers. Unfortunately, this is indicative of widespread

1

discriminatory employment practice at Chevron Pascagoula which has gone unchecked for decades.

This suit is brought to secure the protection of and to redress the deprivation of rights secured by Title VII of the Civil Rights Act of 1991, (hereinafter "Title VII) and 42 U.S.C. § 1981, which provide relief for relief against discrimination and retaliation in employment. Plaintiff seeks injunctive relief, equitable relief, compensatory and punitive damages, and attorneys' fees, and requests a jury trial pursuant to 42 U.S.C. § 1981a.

## JURISDICTION & VENUE

1. This Court has subject matter jurisdiction over this action under 28 U.S.C. §§ 1331(a)(4) and §§ 2201 and 2202.

2. Personal jurisdiction is proper over all Defendants because they reside, work, and oversee individuals who work and have their principal place of business within Jackson County.

3. Venue is proper in this Court under 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to the claims in this Complaint occurred in this District and because Defendants are subject to the Court's personal jurisdiction in this District.

4. Plaintiff requests a jury trial on all issues pursuant to 42 U.S.C. § 1981a.

5. All prerequisites to filing suit have been met.

## THE PARTIES

6. Plaintiff Tommy Harness is an African American male who resides in Moss Point, Mississippi. He was an employee of Defendant at all times relevant to this litigation.

7. Defendant Chevron U.S.A., Inc. is a California company licensed to do business in the State of Mississippi, and at all times relevant to this action, Defendant was the employer of Plaintiff with the meaning of Title VII and § 1981.

**STATEMENT OF CLAIMS**

1. More than thirty days prior to the institution of this lawsuit, Plaintiff filed a charge with the EEOC alleging violations of Title VII by Defendant.

2. On or around July 24, 2023, the Commission issued to Plaintiff a Notice of Suit rights.

3. Plaintiff timely files his Complaint within ninety days of receipt of his notice of right to sue.

4. All conditions precedent to the institution of this lawsuit have been fulfilled.

5. Plaintiff is an African American male.

*I. Chevron's Pascagoula Refinery has been marred by racism and sexism, among other unfair practices, for decades.*

6. Plaintiff Tommy Harness graduated from Alcorn State University in 1973 with degrees in Science and Vocational Agriculture. Mr. Harness began working for Chevron's Pascagoula, Mississippi refinery in January of 1982. He was initially employed as a Trainee One and eventually progressed to a Refinery Mechanic in 1988.

7. Mr. Harness has maintained the Refinery Mechanic position for 34 years. As a Refinery Mechanic, he works in the maintenance department and is paid an hourly wage. Salaried positions such as management and technical side employees make significantly more in compensation.

8. Despite carrying management and technical side duties, his numerous contributions to the workforce IQ, his profitability to this specific location, and his irreplaceable skillset, Mr. Harness' rise in the ranks at Chevron has been stifled. According to Mr. Harness and other employees (both current and retired), race has always played a role in hiring and promotion decisions at the Pascagoula Refinery.

9. Promotions at Chevron Pascagoula for black employees are relatively scarce and disproportionate. Chevron's former Chief diversity and inclusion officer, Lee Jourdan, in a recent Washington Post article specifically revealed the structural racism hindering black employee promotions at Chevron Pascagoula: *Striking Race Gap in Corporate America*, The Washington Post (December 15, 2021), https://www.washingtonpost.com/business/interactive/2021/black-executives-american-companies/.

10. Recently, while Mr. Harness' EEOC complaint was pending, Chevron settled claims brought by a large number of individuals who complained of race and sex discrimination, hostile work environment, and sexual harassment. Mr. Harness' claims were not part of those class of individuals.

## *II. Mr. Harness' contributions to Chevron far exceed his compensation and station with the company.*

11. Mr. Harness has received consistently positive reviews since he began working at Chevron. Although he is listed as a Refinery Mechanic, which has prevented him from receiving higher and equitable compensation, he has more responsibility than most high-salaried employees in management.

12. Mr. Harness has worked nearly every position in the refinery since he began working at Chevron Pascagoula. He manages salespeople and contractors.

13. Mr. Harness runs the entire maintenance department where he is responsible for training operators. In addition, he plays a major role as a consultant for process engineers and structural engineers in the process of purchasing steam traps. In this role, Mr. Harness meets with vendors who sell these instruments, analyzes the products, and helps the process and structural engineers determine whether the equipment is beneficial for the refinery. Then, he makes a

recommendation to the energy-optimizing leader. Most of the time, his recommendation is followed. Mr. Harness is the only person who performs these duties.

14. In addition to his mechanic workload, he has responsibilities on the technical side of operations, which are reserved for managers. These responsibilities include but are not limited to, the following: meeting with vendors to evaluate equipment (for example, steam traps) being sold to the company; acting as a supervisor to subject matter experts on steam traps; writing work orders to have areas surveyed and repaired. Other contributions include organizing a program that generates heat for a compressor that was not operating properly because it was too old.

### *III. Discriminatory practices have prevented Mr. Harness from being promoted.*

15. Mr. Harness has carried out most of the responsibilities mentioned above for nearly two decades. Yet he has never been compensated for them like his white counterparts. In fact, white employees with similar or fewer qualifications, duties, and credentials have been promoted time and time again over black workers, specifically Mr. Harness. Many managers do not have college degrees, yet are earning high six-figure salaries. Even Mr. Harness' general supervisor has only a high school diploma and started after Mr. Harness. In fact, many younger white employees were trained by Mr. Harness, only to be promoted above his position and be compensated more.

16. Although, before filing a claim with the EEOC, Mr. Harness complained of discrimination to Human Resources on January 15, 2022, the discrimination and failure to promote Mr. Harness are ongoing and pervasive. Mr. Harness has made formal written complaints throughout his work tenure, to no avail. In response, Chevron has made it more difficult for him to obtain higher paid positions.

17. Currently, Mr. Harness is working in a capacity that should be classified as a salaried position given his managerial duties. Such status, over time, would have reaped higher compensation than his current rate of pay. Chevron has made such provisions for other employees,

including employees at other refineries, but has denied Mr. Harness similar treatment. Employees at other Chevron refineries who have Mr. Harness' duties have been classified as a salaried position.

18. The culture at Chevron Pascagoula circumvents the standard "ask and receive" hiring practices. Many of the employees at Chevron Pascagoula, particularly white male employees, traditionally have been elevated without a formal application process or standard application requirements. Even when the applications were submitted, it was usually a mere formality. Most of the manager positions were made for white male employees only many of whom were close friends or relatives.

19. Chevron implemented a policy that requires employees such as Mr. Harness to be recommended by a first-line supervisor to be promoted to a salaried position. Mr. Harness has never been recommended despite expressing his wishes to be a manager for decades.

20. Further, black employees, including Mr. Harness, were deterred and stonewalled from applying to positions (especially given the current policy) because of the hostile and uncomfortable culture for black employees. The environment at Chevron Pascagoula takes an emotional toll on minorities, and Chevron is not taking the necessary steps to prevent further harassment.

21. For example, black employees are assumed to be democrats and white employees republicans. To antagonize them, Chevron's managers would frequently use disdainful rhetoric in conference rooms and common areas when referring to "liberals." They also hung disturbing posters on the wall as subtle slights used to intimidate, harass and exclude black employees from participating at work in a meaningful way. Conversations Mr. Harness and others overheard from white supervisors regarding these posters made it clear that they were targeting racial minorities.

(The below photo shows an illustration of one of the inappropriate posters in the conference room at Chevron Pascagoula.)



22.     It is a foregone conclusion that they will not be promoted. Their place is to work the line for their white superiors.

23.     Mr. Harness has made it widely known that he wished to be elevated to a salaried, managerial position yet has been stonewalled. Mr. Harness contends that this discrimination is ongoing, and Chevron created a cumbersome process and no opportunities for Mr. Harness to advance to a position commensurate with his experience level and contributions at work. The failure to promote Mr. Harness at all times on the basis of race violates his rights under Title VII.

<u>COUNT ONE</u><br><u>RACE DISCRIMINATION</u>

24.     Plaintiff repeats and re-alleges each of the foregoing paragraphs as if set forth fully herein.

25. Plaintiff was passed over for promotion in violation of 42 U.S.C. § 2000e, et seq. (Title VII of the Civil Rights Act of 1964), as amended, protecting Plaintiff from discrimination on the basis of race.

26. Defendants deprived, and are continuing to deprive, Plaintiff of the rights secured to him by the United States Constitution.

27. Defendant's conduct violates Title VII of the Civil Rights Act of 1964, which prohibits discrimination in employment on the basis of race and in Greenaway's case, being disabled.

28. Defendant's conduct also violates 42 U.S.C. § 1981, which prohibits discrimination on the basis of race in the making or enforcement of contracts.

29. Plaintiff timely filed a charge of discrimination to challenge the race discrimination they suffered. They have received a right-to-sue letter on this charge and they timely file this lawsuit to vindicate his rights.

## COUNT TWO
## VIOLATION OF LILLY LEDBETTER PAY DISCRIMINATION

30. Plaintiff repeats and re-alleges each of the foregoing paragraphs as if set forth fully herein.

31. Defendant has been funneling white employees into operation and management where the wages are significantly higher than the labor jobs to which the blacks including the Plaintiff are relegated. Plain say these actions constitute discriminatory compensation declensions which have resulted in actual damages to Plaintiff.

## COUNT THREE
## RETALIATION

32. Plaintiff repeats and re-alleges each of the foregoing paragraphs as if set forth fully herein.

33.     Defendant intentionally, willfully, and wantonly retaliated against Plaintiff in response to his complaints of discrimination and unfair practices.

34.     As a direct and proximate result of Defendant's actions described herein, Plaintiff suffered for which he should be compensated.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully prays that the Court enter an award and judgment in his favor, and against Defendant as follows:

(a) awarding Plaintiff all expenses and costs, including attorneys' fees, incurred in connection with this action from Defendants;

(b) a declaratory judgment finding that the actions of Defendant violate Plaintiff's rights protected under Title VII of the Civil Rights Act and § 1981;

(c) an order requiring Defendant to make Plaintiff whole by awarding him back-pay, compensatory, punitive, emotional, and/or nominal damages;

(d) an order directing Defendants to take such affirmative steps necessary to remediate past discrimination; and

(e) such other and further relief as the Court deems appropriate or that is necessary to make the Plaintiff whole.

## JURY DEMAND

Plaintiff demands a trial by jury on all claims and issues so triable.

Date:   August 21, 2023

Respectfully submitted,

*/s/ Keith B. French*
Keith B. French
MS Bar #:104628
**Keith B. French Law, PLLC**
401 E. Capitol St, Suite 515
Jackson, MS 39201
kfrench@peoplefirstfirm.com
Tel: 601-376-9306
Fax: 832-243-1927

*s/Ahmad R. Smith*
Ahmad R. Smith, MSB# 104595
A.R. SMITH LAW, PLLC
Post Office Box 16392
Jackson, Mississippi 39236
ahmad@arsmithlaw.com
(769) 208-6679 (telephone)

**ATTORNEYS FOR PLAINTIFF**
